IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TAIZON Z. WYNN | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 15-03273 |
| CAROLYN W. COLVIN, | : | |
| Acting Commissioner of | : | |
| Social Security | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                          **JUNE   9  , 2017**

Presently before the Court is an action brought by Plaintiff, Taizon Z. Wynn ("Wynn" or "Plaintiff") pursuant to 42 U.S.C. § 405(g) seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's claim for Supplemental Security Income ("SSI"). For the following reasons, we will adopt the Report and Recommendation of Magistrate Judge Marilyn Heffley, and direct the Clerk of Court to enter judgment in favor of Defendant, Carolyn W. Colvin ("Colvin" or "Defendant").

**I.     BACKGROUND**

**A.     Procedural Background**

On May 16, 2012, Wynn filed his initial SSI application. The application was denied on October 17, 2012. On November 14, 2012, Wynn filed a request for a hearing. (R. at 150.)[1] On February 20, 2014, a hearing was held before the Administrative Law Judge ("ALJ"). (*Id.* at 49- 98.) On April 4, 2014, the ALJ issued an opinion denying Wynn benefits. (*Id.*) On May 2,

---

[1] Similar to the designation to the Record in Judge Heffley's Report and Recommendation, we use "R." followed by the page number to cite to the administrative record. (ECF No. 11.)

2014, Wynn submitted a request to the Appeals Council seeking a review of the ALJ's findings. (*Id*. at 45.) On April 8, 2015, the Appeals Council denied Wynn's request for review, thereby affirming the ALJ's decision as the Commissioner's final decision.[2] (R. at 1.) On June 12, 2015, Wynn filed a Complaint in this Court (ECF No. 3) pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Commissioner's decisions denying Wynn's SSI claim. On January 28, 2016, Wynn filed a brief in support of his request for judicial review. (ECF No. 17.) On March 1, 2016, Defendant filed a response to Wynn's Request for Review. (ECF No. 18.) On March 14, 2016, the case was referred to Magistrate Judge Heffley for a Report and Recommendation ("R & R") (ECF No. 19.) That same day, Wynn filed a reply to Colvin's Response to Wynn's Brief and Statement of Issues in Support of his request for review. (ECF No. 20.) Magistrate Judge Heffley issued the R & R on July 26, 2016. (ECF No. 22.) On August 24, 2016, Wynn filed Objections to the R & R. (ECF No. 26.)

### B. Factual Background

On May 16, 2012, Wynn's mother, Latresha Vaughn Wynn, filed an application for SSI on behalf of her son under Title XVI of the Social Security Act, alleging that Wynn suffered from bipolar disorder and a history of polysubstance abuse. Wynn was sixteen (16)-years-old at the time. The ALJ found that Wynn's alleged impairments before he reached age eighteen (18) were not severe, and did not medically constitute a listed impairment. (R. at 121-23.) Wynn's medical records indicate that in March 2010 he reported that he had suffered from persistent headaches for the previous three years. (*Id*. at 121.) After receiving treatment for these headaches, he returned to a physician in February 2012, complaining that the headaches had

---

[2] The ALJ's decision became the Commissioner's final decision when Wynn's request for review was denied by the Appeals Council. We use "ALJ" and "Commissioner" interchangeably to identify the authority issuing the April 4, 2014 ALJ opinion.

reemerged and bothered him on a daily basis. (*Id.*) A September 2012 medical report described Wynn's headaches as "minor" and a July 2013 report stated that he was being treated for headaches and that they were "stable." (*Id.*)

Wynn's complaints of PTSD are the result of a series of assaults that he suffered between September 2012 and late October 2013. Wynn suffered the first assault on September 13, 2012. (*Id.* at 326-40.) Wynn later reported that he was the victim of a home invasion on October 31, 2013, during which the assailants discharged a taser against him multiple times. (*Id.* at 126.) Wynn complained that as a result of the October 31, 2013 invasion, he hyperventilated, suffered panic attacks, maintained a high level of anxiety, had difficulty eating and sleeping, and "was afraid to the leave the house." (*Id.* at 126 (citing Ex. 10F).) The ALJ's findings indicate that Wynn suffered musculoskeletal injuries from the assaults, but that he did not suffer any lasting injuries as a result of the attacks. (*Id.* at 121.)

In addition, the ALJ noted that Wynn suffered from intermittent asthma and "hemophilia secondary to an enzyme deficiency." (*Id.*) However, he found no evidence of limited cognitive functioning. (*Id.* at 122.) The ALJ did acknowledge that Wynn had moderate personal and social functioning limitations. (*Id.* at 122-23.) The ALJ found that the parties did not offer any reliable evidence of poor personal care or hygiene, and that Wynn did in fact enjoy being with others, and was able to attend Narcotics Anonymous ("NA") meetings twice a week.[3] (*Id.*) The ALJ gave considerable weight to evidence that Wynn participated in social functioning, stating that there is reason to believe he would "return to normal levels of cognitive functioning with continued treatment and mediation management." (R. at 122-23.) In addition, while the ALJ

---

[3] The ALJ believed that Wynn's observed limited social engagement was due to the immediate aftermath from the October 31, 2013 home invasion.

3

observed moderate difficulties with "[c]oncentration, persistence or pace," Wynn exhibited no episodes of decompensation. (*Id.* at 123.) Finally, Wynn's GAF[4] scores ranged from 30 (in July 2012) to 70.[5] (*Id.* at 126.) Based on the above, the ALJ concluded that Wynn had no limitation in health and physical well-being, and "[b]ecause the claimant's mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration[,]" he was not disabled before he reached age eighteen (18). (*Id.* at 123, 132.)

Both Wynn and his mother testified at the ALJ hearing. The ALJ noted that Wynn's testimony was less than credible, and that Wynn's mother's testimony lacked substantiation. (*Id.* at 132-33.) Specifically, the ALJ highlighted the fact that Wynn had demonstrated an ability to remain social, and cited that Wynn's mental health examination scores fell within normal levels. (*Id.* at 133.) Moreover, as mentioned above, the ALJ expressed confidence that Wynn's symptoms would improve with regular treatment. (*Id.*) Finally, the ALJ noted that following his questioning of the VE, "considering [Wynn's] age, education, work experience, and residual functional capacity, [Wynn] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (R. at 134.) The ALJ noted that since reaching age eighteen (18) Wynn:

> has had the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to work with simple repetitive tasks; each day same job site, tasks, and co-workers; no outdoor work;

---

[4] Global Assessment of Functioning ("GAF") scores "are not dispositive and represent only snapshots of functioning at the moment of assessment." (R. at 126.)

[5] Wynn's GAF score was 40 in March 2013, which was right before he began treatment. He scored a 50 in January 2014, which was shortly following the October 2013 assault. In both September 2012 and March 2013 he scored 55, which the ALJ felt was "more consistent with the claimant's general level of functioning." (*Id.* at 127.)

4

no public interaction; no team work; and work that allows short periods of inattention to be made up by the end of the work shift or workday.

(*Id.*)

## II. STANDARD OF REVIEW

We review *de novo* those portions of the R & R to which specific and timely objections have been made. 28 U.S.C. § 636(b)(1)(C); E.D. Pa. Local R. Civ. P. 72(b); *Cont'l Cas. Co. v. Dominick D'Andrea, Inc.*, 150 F.3d 245, 250 (3d Cir. 1998); *Hagan v. Colvin*, No. 13-6092, 2015 WL 3970890, at *1 (E.D. Pa. June 29, 2015); *Wright v. Pennsylvania*, No. 10-264, 2013 WL 1442560, at *1 (E.D. Pa. Apr. 8, 2013). In doing so, the court may "accept, reject, or modify, in whole or in part, the findings or recommendations" contained in the report. 28 U.S.C. § 636(b)(1)(C). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. *Colgan v. Astrue*, No. 09-0938, 2012 WL 752083, at *1 (E.D. Pa. Mar. 7, 2012) (citing *United States v. Raddatz,* 447 U.S. 667, 676 (1980)); *Collier v. Colvin*, No. 12-5351, 2014 WL 2094286, at *1 (E.D. Pa. May 20, 2014). However, the district court is not permitted to re-weigh the evidence of record and come to its own conclusions. *Palmer v. Apfel*, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Instead, the role of the court on judicial review is to determine whether there is substantial evidence in the record to support the Commissioner's final decision. *Doak v. Heckler*, 790 F.2d 25, 28 (3d Cir. 1986); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985); *see also Notobartolo v. Astrue*, No. 06-2128, 2007 WL 4443245, at *6 n.89 (E.D. Pa. Dec. 18, 2007) (stating "the Court's obligation . . . is not to re-weigh the record evidence to determine whether alternative findings to those actually made by the ALJ might be 'supported;' it is to assess whether the ALJ reached findings supported by substantial evidence in a fashion comporting with the governing law").

The ALJ's factual findings must be accepted as conclusive, provided that they are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 401 (quoting *Consol. Edison Co. v. NRLB*, 305 U.S. 197, 229 (1938)); *see also Dobrwolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). The "substantial evidence" test has been defined by the United States Supreme Court as "more than a mere scintilla." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). It "must do more than create a suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *Id.* If the Commissioner's conclusion is supported by substantial evidence, we may not set aside the Commissioner's decision even if we would have decided the factual inquiry differently. 42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Perez v. Comm'r of Soc. Sec.*, 521 F. App'x 51, 55 (3d Cir. 2013) (instructing that we are to give judgment on the record "without regard to errors or defects which do not affect the substantial rights of the parties") (citing 28 U.S.C. § 2111)).

## III. DISCUSSION

Wynn raises four objections to the Report and Recommendation. He claims that the ALJ erred by:

> (1) not identifying post-traumatic stress disorder ("PTSD") as a severe impairment; (2) not assigning significant weight to the opinion of treating psychiatrist, Dr. Rohan Gopalani, M.D.; (3) not finding that his childhood impairments met or equaled a listed impairment; and (4) omitting certain limitations from the hypothetical posed to the [Vocational Expert, Steve H. Gumerman ("Gumerman" or "VE")].

### A. Not Identifying PTSD as a Severe Impairment

Wynn first objects to the ALJ's decision to not classify his PTSD as a "severe" impairment. (Pl.'s Objections 4.) The Third Circuit requires that, in determining whether an individual is disabled, and therefore eligible for benefits, the ALJ must follow a five-step sequential analysis.[6] *See Perez*, 521 F. App'x at 54; *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). This analysis requires the ALJ to assess whether the applicant: "(1) is engaged in a substantial gainful activity; (2) has a 'severe' medical impairment; (3) suffers from an impairment that is listed in the regulation's appendix; (4) can still perform past relevant work; and (5) can perform any other work existing in significant numbers in the national economy." *Perez*, 521 F. App'x at 54 (citing 20 C.F.R. § 404.1520). Wynn's first objection is based on the alleged failure of the ALJ to conduct a proper step two analysis. Under 20 C.F.R.§§ 404.1520(c) and 416.920(c), an impairment or combination of impairments is not severe if it does not "significantly limit[] your physical or mental ability to do basic work activities." *Id.*; *McCrea*, 370 F.3d at 360; *see also* §§ 404.1521(a), 416.921(a). 20 C.F.R. §§ 404.1521(b)(1) and 416.921(b)(1) define "basic work activities" to include, *inter alia*, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." *Id.*

In his first, objection, Wynn asserts that in failing to consider Wynn's PTSD as severe, the ALJ did not adequately consider Dr. Gopalani's opinion that Wynn is "highly traumatized" and suffers from "extreme social anxiety" as a result of his PTSD. (Pl.'s Objections 2-3.) Wynn reasons that his disability should have been classified as severe, because his PTSD was first diagnosed in 2013, which predated Dr. Gopalani's treatment, and since he suffered two assaults following his initial diagnosis. (*Id.* 2.) The ALJ reasoned that Wynn for a period of time was able to socialize with others, at least in some capacity. (*Id.*) The ALJ also relied on Dr.

---

[6] The five-step sequential analysis is codified at 20 C.F.R. § 404.1520.

Gopalani's diagnostic opinion and records to conclude there was sufficient evidence that Wynn's PTSD did not cause "significant functional limitations" and was therefore not severe. (R. at 125-26.) Wynn also contends that the ALJ failed to adequately weigh Wynn's PTSD at steps three and four of the five-step sequential analysis, and failed to consider Wynn's PTSD when formulating his Residual Functional Capacity ("RFC"). (Pl.'s Objections 4.)[7]

Courts within this Circuit have held that the underlying "severe impairment" analysis is based on an assessment of an individual's PTSD symptoms, not the fact of the diagnosis itself. *See In re Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990); *Johnson v. Sullivan*, 749 F. Supp. 664, 669 (E.D. Pa. 1990). The Third Circuit has maintained that the burden placed on an applicant at step two of the five-step sequential analysis is not an exacting one. *McCrea*, 370 F.3d at 360. Instead, the step-two burden on a claimant is "de minimis," and at this stage "an applicant need only demonstrate something beyond 'a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" *Perez*, 521 F. App'x at n.4 (citing *McCrea*, 370 F.3d at 360); *Bowen v. Yuckert*, 482 U.S. 137 (1987) (maintaining that the step two inquiry is a *de minimis* screening device used to dispose of groundless claims); *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003) ("If the evidence presented by the claimant presents more than a 'slight abnormality,' the step-two requirement of 'severe' is met, and the sequential evaluation process should continue."). Any doubt as to whether the step-two burden has been met is to be resolved in favor of the applicant. *Newell*, 347 F.3d at 546-47. We also note that the analysis at step two is wholly

---

[7] Magistrate Judge Hefflely disagreed with the ALJ's determination that Wynn's PTSD was not a severe impairment. (Pl.'s Objections 2; R & R at 10.) She stated, however, that even though the ALJ did not classify Wynn's disability as severe, the ALJ conducted a proper analysis and adequately "considered all impairments regardless of whether . . . they were severe." (*Id.*) She concluded that the ALJ's determination was harmless error.

independent of the analysis at later steps. *Alvarado v. Colvin*, 147 F. Supp. 3d 297, 311 (E.D. Pa. 2015).

Here, the ALJ concluded that Wynn's disability was not severe. He observed that prior to April 2013, Wynn reported to his therapist, consistently attended the intensive outpatient program at Horsham Clinic and Rehab, and had not abused drugs since July 2012. (R. at 125.) The ALJ found that there were no noted behavioral problems, and Wynn reported "a normal level of cooperation around the house, had friends, enjoyed playing sports, played flag football, and took public transportation independently." (R. at 125.) The ALJ also detailed evidence of Wynn's other relatively normal behavior prior to the October 31, 2013 home invasion. (*Id.* at 126.) While many of Wynn's symptoms worsened after the October 31, 2013 home invasion, the ALJ concluded that "there is no evidence to suggest that he will not improve with continued treatment and return to his baseline level of functioning." (*Id.*)

Notwithstanding the liberal standard required to establish a claim that a disability is "severe," and regardless of whether we would have reached a similar conclusion under our independent analysis of the record, we must only determine whether the facts and conclusions drawn were based on substantial evidence. We find that they were. The ALJ properly conducted a complete, five-step analysis, and comprehensively considered the full functional limitations of Wynn's PTSD. He adequately considered the totality of the factors at issue, including the opinions of Dr. Gopalani and Dr. Gopalani's associates. The ALJ also based Wynn's RFC calculation on "all of the claimant's impairments, including impairments that are not severe." (*Id.*)

    **B.**    **ALJ's Failure to Assign Significant Weight to Dr. Gopalani's Opinion**

The ALJ cited three main reasons to partially discredit Dr. Gopalani's opinion. First, Dr. Gopalani's assessment was based in part on subjective reports from Wynn's mother. Next, Dr. Gopalani did not begin treating Wynn until January 2014, after Wynn had already been assaulted twice. Finally, Dr. Gopalani's evaluation was based solely on his short-tenured relationship with Wynn, which forced him to rely on the limited number of visits by Wynn. (*Id.* at 133.)

The Third Circuit has determined that evidence to be considered by an ALJ includes medical and vocational information, information from the hearing, and other evidence that would be useful in helping to make a determination. *Cotter v. Harris*, 642 F.2d 700, 705-06 (3d Cir. 1981). Generally, the findings and opinions of treating physicians are afforded deferential weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d) (2); *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993). However, it is firmly established "that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler v. Comm. of Social Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (quoting *Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011)); *Hagan v. Colvin*, No. 13-6092, 2015 WL 3970890, at *2 (E.D. Pa. June 29, 2015). The ALJ is not *required* to accord any significant weight to the report of a treating physician, and may reject the treating physician's analysis, where there is a lack of data supporting that analysis. *Newhouse*, 753 F.2d at 286.

Wynn contests the ALJ's decision to partially disregard Dr. Gopalani's opinion with regard to each of the above three points. First, Wynn objects that it was improper to discredit Dr. Gopalani's opinion on the grounds that the opinion was completed with Wynn's mother's assistance. (Pl.'s Objections 5.) Wynn argues that the ALJ misinterpreted Dr. Gopalani's testimony, and that "there is nothing in Dr. Gopalani's medical source statement indicating that he based his opinion on treatment notes at all, much less on notes authored by someone else."

10

(*Id.* at 6.) Second, Wynn seeks to discredit the ALJ's conclusion that Dr. Gopalani's opinion should be given minimal weight due to Dr. Gopalani's transient relationship with Wynn. (*Id.*; R. at 133.) On this point, Wynn states that Dr. Gopalani was both "aware of Mr. Wynn's history of severe depression and PTSD requiring hospitalization and outpatient treatment in other facilities, and Dr. Gopalani's three examinations provided him with more than sufficient clinical data on which to base his opinion." (Pl.'s Objections 7.) Finally, Wynn contends that the ALJ was incorrect in assuming that he suffered his first assault on October 31, 2013.[8]

Notwithstanding whether Dr. Gopalani relied predominantly on the notes of Wynn's mother, or whether his three visits with Wynn provided him with adequate information to formulate an accurate diagnosis, we find that there is substantial evidence to support the ALJ's findings, and we will not disturb them.

### C. Not Finding that Wynn's Childhood Impairments Met or Equaled a Listed Impairment

Wynn states in his third objection that the ALJ should have found that "his impairments functionally equaled a listing before he attained age 18." (R & R at 15 (quoting Pl.'s Br. at 13-17, ECF No. 17).) Wynn argues that in determining that he was not disabled as a child, the ALJ

---

[8] With regard to this factor, Wynn's objection misconstrues the evidence presented by the ALJ. While the ALJ's reasoning on this issue was not entirely cogent, when analyzed contextually the ALJ indicates that he recognized that Wynn was assaulted prior to October 31, 2013. Specifically, the ALJ stated that "[t]he claimant has been assaulted on at least two occasions." (R. at 121.) He also noted:

> although the claimant has recently experienced an exacerbation of his social anxiety and isolation following the **assaults** and break in, there is no reason to believe that his functioning will not improve with continued treatment. Prior to these **incidents**, the claimant's treatment records show frequent social activities and are not indicative of any significant social isolation.

(*Id.*) (emphasis added).

11

inappropriately assigned insufficient weight to the opinions of both Wynn's examining psychologist (Dr. Anne Marie Wolf-Schatz, M.D.) and Wynn's treating psychiatrist (Dr. Daniel Schwarz, Ph.D.). (Pl.'s Objections 9.) According to Wynn, appropriately weighing opinions "require[d] a finding that Wynn's impairments functionally equaled a listed impairment." (Pl.'s Br. at 13-17.)

Dr. Schwarz opined that Wynn was "inconsistent and sporadic" in attending and completing tasks, and "required ongoing adult monitoring and supervision in caring for self at 17 years of age." (Pl's Objections 9.) However, Dr. Schwarz also noted that Wynn's attention problems were "mild" and that Wynn's "prognosis was '[f]air as long as [he] continues to pursue ongoing psychiatric and psychological therapy.'" (R & R at 17 (quoting R. at 457).) The ALJ concluded that "[b]ecause Dr. Schwarz did not use the term 'marked' in his assessment of the domains, it was within the ALJ's discretion to assess the opinion as to each domain's severity." (R. at 127; R & R at 16.) Wynn argues that although Dr. Schwarz did not use the term "marked" in his assessment, the totality of Dr. Schwarz's analysis of Wynn's limitations implicitly indicates a marked limitation. (Pl.'s Objections 9.) Wynn also contends that because the ALJ was imprecise and incorrectly assumed that Dr. Schwarz "provide[d] no information," the ALJ did not adequately consider the proffered evidence. (*Id.* at 10-11.)

In support of the ALJ's decision, the R & R makes the following observation:

> The ALJ could reasonably have found that these limitations, real as they were, did not rise to the level of a 'marked' limitation—i.e., did not 'interfere[] seriously with [Wynn's] ability to independently initiate, sustain, or complete activities.' 20 C.F.R. § 416.926a(e)(ii)(2)(i). Thus, substantial evidence supported the ALJ's conclusion that Dr. Schwarz's opinion indicated a 'less than marked' limitation.

(R & R at 17.) We agree with this observation.

12

The ALJ is afforded leeway to independently interpret whether a treating physician's opinion warrants a disability determination if it does not use the term "marked." *See, e.g.*, *Lacy v. Barnhart*, No. 02-3592, 2004 WL 1237281, at *5 n.5 (E.D. Pa. Apr. 20, 2004) (holding that non-"marked" language did not support a finding of disability); *Klinger v. Barnhart*, No. 02-1008, 2003 WL 21654994, at *5 (E.D. Pa. July 15, 2003) (finding that non-"marked" language permits the ALJ to determine whether the opinion tips the balance towards ability or disability). *But cf. Notobartolo v. Astrue*, No. 06-2128, 2007 WL 4443245, at * 4 (E.D. Pa. Dec. 18, 2007) (holding that one physician's rating of "fair" served as the functional equivalent to another physician's rating of "marked," thereby supporting a finding of a disability).

Since Dr. Schwarz did not use the term "marked" limitation in each of Wynn's childhood disability domains, it was proper for the ALJ to conduct an independent analysis of "each domain's severity" (R & R at 16), to appropriately determine if Wynn was disabled.[9] We will not disturb the ALJ's assessment that the opinion of Dr. Schwartz supported a "less than marked" limitation on the domains at issue. There is substantial evidence to support the ALJ's determination.

### D. Omitting Certain Limitations From the Hypothetical Posed to the VE

Finally, Wynn contends that the ALJ erred in failing to sufficiently incorporate each of Wynn's limitations into the hypothetical the ALJ posed to the VE. In the case of *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984), the Third Circuit made the following observations with regard to vocational expert testimony:

> Testimony of vocational experts in disability determination proceedings typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant

---

[9] The record indicates that the ALJ did in fact consider Dr. Schwarz's opinion in evaluating the extent of each domain's severity. (R. at 129.)

can perform certain types of jobs, and the extent to which such jobs exist in the national economy. While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.

*Id.*

In addressing hypothetical questions posed to VEs, the Third Circuit has held that an ALJ "must consider all relevant evidence in the record," but that "he is 'free to accept some medical evidence and reject other evidence, provided that he provides an explanation for discrediting the rejected evidence.'" *Dunson v. Comm'r Soc. Sec.*, 615 F. App'x 65, 69 (3d Cir. 2015) (quoting *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014)); *Fischer v. Colvin*, No. 13-4194, 2015 WL 11051102, at *4 (E.D. Pa. July 21, 2015) (approving ALJ's hypothetical to the VE, which omitted certain limitations the ALJ deemed lacked credibility), *report and recommendation adopted*, No. 13-4194, 2016 WL 3345458 (E.D. Pa. June 16, 2016); *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005) (maintaining that *only* "medically established" and "credibly established" impairments must be referenced); *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("[A] hypothetical question posed to a vocational expert must reflect *all* of a claimant's impairments.") (quoting and adding emphasis to *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987)).[10] However, an ALJ "need not 'submit to [a] vocational expert every impairment *alleged* by a claimant.'" *Estrella v. Astrue*, No. 08-5804, 2010 WL 742618, at *5 (E.D. Pa. Mar. 2, 2010) (quoting *Rutherford*, 399 F.3d at 554 (emphasis in original)). Instead, as the Court

---

[10] We note that "[t]he ALJ 'must specifically identify and explain what evidence he found not credible and why he found it not credible.'" *Bynum v. Colvin*, No. 13-6682, 2016 WL 4138610, at *3 (E.D. Pa. Aug. 3, 2016) (quoting *Zirnsak*, 777 F.3d at 612); *see also Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001) ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.").

14

directed in *Podedworny*, in posing hypotheticals to a VE with regard to a claimant's ability to perform alternative employment, the expert must be given an opportunity to evaluate those impairments "as contained in the record." *Rutherford*, 399 F.3d at 554 (citing *Podedworny*, 745 F.2d at 218).

It is undisputed that the ALJ's hypothetical posed to the VE omitted various limitations that were outlined in Dr. Gopalani's opinion. However, the ALJ devoted two full paragraphs of his opinion to assessing the credibility of Dr. Gopalani's opinion, clearly establishing those points of the evaluation that he sought to discredit. (R. at 133.) The ALJ determined that because he had significantly discredited Dr. Gopalani's opinion, it was unnecessary to exhaustively include all of Wynn's alleged limitations in the hypothetical posed to the VE.[11] Since substantial evidence exists to establish that the ALJ provided a rational basis for discrediting Dr. Gopalani's opinion, we accept the ALJ's assessment that it was an exercise in futility for the VE to examine each of the impairments identified by Dr. Gopalani.

## IV. CONCLUSION

Based upon an independent review of the record, we conclude that there is no reason to disturb the ALJ's decision. The R & R provides a cogent, well-reasoned, and strongly-supported analysis of why the ALJ's determination was proper. Wynn's objections are without merit. Accordingly, the Objections to the R & R will be overruled, the R & R will be approved and adopted, and Plaintiff's request for relief will be denied.

---

[11] As discussed above, Dr. Gopalani's opinion was discredited based on (1) his ephemeral relationship with Plaintiff; (2) that his report was limited to Wynn's "post-assault functioning rather than his usual activities; and (3) the opinion conflicted with Wynn's actual treatment records.

15

An appropriate Order follows.

**BY THE COURT:**

**R. BARCLAY SURRICK, J.**